# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:10CR00036-002 |
| v. | ) | **OPINION** |
| | ) | |
| **WESLEY ADAM REEDY,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Kathleen Carnell, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Wesley Adam Reedy, Pro Se Defendant.*

The defendant, proceeding pro se, has filed a motion seeking relief under 28 U.S.C. § 2255. The United States has filed a motion to dismiss, to which the movant has responded. For the reasons stated, I will grant the motion to dismiss and dismiss the § 2255 motion.

I.

Reedy began a term of supervised release in February 2014 after serving a sentence of 39 months imprisonment for conspiracy to manufacture and to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846. During his period of supervised release, he committed multiple violations of the conditions of his supervision. On January 23, 2017, he admitted to using methamphetamine and marijuana. He waived a hearing on the violation and agreed to his supervision being extended for one year, and he

was ordered to undergo substance abuse treatment. On May 17, 2017, Reedy admitted to using methamphetamine and marijuana. On January 30, 2018, Reedy admitted using methamphetamine. On February 1, 2018, his supervising probation officer petitioned the court that Reedy's supervision be revoked for these violations, along with the additional allegation that in January of 2018 he had provided his 15-year-old daughter with methamphetamine and using the drug with her.

The probation officer thereafter prepared a Supervised Release Violation Report which alleged four violations. Violation 1 was based on Reedy's use of methamphetamine and marijuana on May 17, 2017. Violation 2 was based on his possession of a glass marijuana pipe, and his admission that he had used it for smoking marijuana. Violation 3 was based on his supplying and using methamphetamine with his daughter on or about January 8 or 9, 2018. Violation 4 was based on his use of methamphetamine on January 30, 2018. The report concluded that Reedy had committed Grade C violations, with an advisory guideline range of three to nine months.

A supervised release revocation hearing was held on February 27, 2018. Reedy admitted to all but the charge that he had supplied methamphetamine to and used methamphetamine with his daughter. The government responded by presenting testimony from Reedy's 15-year-old daughter, C.A. C.A. testified that

she had started seeing Reedy two to three times per week beginning in 2017. Previously, she had not had any relationship with Reedy. When visiting with Reedy, she usually went to his house, but on one unspecified occasion, she met him at Taco Bell.

C.A. stated that at some point in January 2018, she confided in a friend that she had been feeling suicidal and had been using drugs. The friend told the principal of their high school, who reported the information to the Smyth County Department of Social Services ("DSS"). A DSS representative then interviewed C.A., who stated that Reedy had provided her with methamphetamine.

C.A. testified that she had used marijuana, which she had obtained from friends, as well as methamphetamine. During the hearing, C.A. was reluctant to identify the source of the methamphetamine; however, she eventually stated that she had received methamphetamine from her father. She testified that she had asked him for it and had told him that she intended to use it whether he provided it or not. C.A. stated that her father was with her when he used the methamphetamine and that her friend B. was also present. When asked, "And was this in January of this year?" she responded "Yeah. I think so." Hr'g Tr. 9, ECF No. 114. She did not specify a date, nor did she state where Reedy had given her the methamphetamine or where she had used it.

In his allocution at the renovation hearing, Reedy gave the following statement:

> On the day that stuff happened, the girl that was with her, you know, they was using. I took the girl home. I just wanted you to know the whole story. It was about 11:00 at night. I took the girl home and we come back. That was the day in question.
>
> As far as my drug use, I do have problems, sir. I don't know how to beat it. So, it's terrible. But I work hard. I try to take care of my family. And [C.A.] was new. She's a teenager with a teenager mind, and we got a nine-year-old boy. Everything happened all too fast for me to register. So, something I wouldn't even dream of doing is doing drugs with my child.

*Id.* at 17–18.

In determining the appropriate sentence, I noted that I found C.A. to be credible. I stated on the record:

> I recognize that an argument has been made on the defendant's behalf that she may have wished to show his guilt to protect other sources, perhaps contemporary friends of hers, or those who are of her age who may have supplied her with methamphetamine. But I had an opportunity to, of course, view her testimony and listen to it. And I think it's unlikely that she would have testified as she did to protect some friend or other source rather than her biological father. There's no indication that she has any problems with him. She testified that she visited him frequently. There's no indication [that] they were not on good terms. No other motivation indicated why she would testify as she did.

*Id.* at 20-21.

I found that because Reedy had committed a felony under Virginia state law, he had committed a Grade A violation.[1] This gave Reedy an advisory guidelines range of 12 to 18 months imprisonment. I then revoked Reedy's supervised release and sentenced him to 18 months imprisonment and three years supervision. In fashioning this sentence, I noted that

> [i]n addition to the seriousness of [Violation 3], the defendant has engaged in a consistent breach of trust of the conditions of his supervision. . . . [I]ntensive substance abuse treatment obviously has not made [a] difference. And I believe that a period of incarceration is particularly important to serve to punish the breach of trust by the defendant, and also to attempt to deter him from further future conduct.

*Id.* at 22–23.

Reedy appealed his sentence, arguing that he was deprived of due process and a fair revocation hearing because the court questioned the reluctant teenage witness and, according to Reedy, the court abandoned its neutral and detached role during the revocation hearing. The court of appeals affirmed this court's decision, finding that there was no reversible error. *United States v. Reedy*, 738 F. App'x 156, 157 (4th Cir. 2018) (unpublished).

---

[1] Grade A violations of supervision are defined as conduct which, among other things, constitutes a federal, state, or local offense punishable by imprisonment exceeding 20 years. U.S. Sentencing Commission Guidelines Manual § 7B1.1(a)(1) (2018). Reedy's conduct occurred in Virginia, and Virginia law provides for imprisonment up to 50 years for an adult to provide controlled substances to a person under 18 years of age. Va. Code Ann. § 18.2-255(a)

In his present § 2255 motion, Reedy asserts two grounds for relief. First, he claims that his attorney provided ineffective assistance of counsel during the revocation hearing by failing to impeach C.A. with text message evidence and failing to present the testimony of C.A.'s friend, who Reedy says would have contradicted C.A.'s account. Second, he claims that the court violated his due process rights when it relied on the testimony of his 15-year-old daughter during his revocation hearing because, according to Reedy, the testimony was materially false.

## II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The movant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686. To that end, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's alleged deficient performance. *Id.* at 687. To satisfy the prejudice prong of *Strickland*, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694. Failing to meet the prejudice prong of *Strickland* is enough to doom a claim. *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992).

Supervised release revocation proceedings are distinct from criminal prosecutions. *United States v. Riley*, 920 F.3d 200, 205 (4th Cir. 2019). A "supervised release revocation hearing is a less formal proceeding" than a criminal proceeding, and the rights available in a criminal proceeding are "not co-extensive" with the rights applicable in a supervised release revocation hearing. *United States v. Ward*, 770 F.3d 1090, 1097 (4th Cir. 2014). For a supervised release hearing, due process requires "that a defendant charged with violating a condition of supervised release be afforded notice of the charges against him . . . sufficient to allow the releasee to prepare to defend against the charges." *United States v. Chatelain*, 360 F.3d 114, 121 (2d Cir. 2004) (internal citations omitted).

III.

Reedy asserts that he offered his counsel evidence before the revocation hearing that would have shown that C.A.'s testimony was false, but his counsel did not use the evidence to impeach C.A. or conduct any further investigation. The evidence to which Reedy refers consists of text messages exchanged between C.A. and Reedy and between C.A. and Reedy's wife, Cindy Reedy. According to Reedy, these text messages prove that C.A. did not see Reedy on January 8 or 9, 2018, when Reedy allegedly gave her methamphetamine, and that Reedy was not at his house on those dates. Reedy asserts that the text messages further show that C.A. was not with B. on those dates, but was instead with Karla Monreal, Cindy Reedy, and Reedy's minor son. Reedy argues that his counsel was ineffective in failing to call Monreal and Cindy Reedy as witnesses at the revocation hearing to refute the testimony of C.A. Reedy has submitted declarations of himself, Monreal, and Reedy as well as copies of text messages.

Regarding his allocution statement, Reedy asserts that he was taken by surprise by C.A.'s testimony and was confused about the dates on which events occurred. He states that the incident in which he caught C.A. and B. using methamphetamine was months before January 8 and 9, 2018. Reedy speculates that had his counsel presented the referenced evidence, I would have disbelieved

C.A.'s testimony and would have sentenced Reedy to a term of incarceration of three to nine months imprisonment rather than 18 months.

Reedy's ineffective assistance of counsel claim does not satisfy the prejudice prong of *Strickland*. Reedy is required to show that, were it not for the failures of his counsel, the result of his revocation hearing would have been different. He fails to do that.

While in a criminal trial the burden of proof is beyond a reasonable doubt, here the government only had to prove its case by a preponderance of the evidence. In order to meet that standard, the government was only required to prove that "the existence of a fact" was "more probable than its nonexistence." *United States v. Padgett*, 788 F.3d 370, 374 (4th Cir. 2015) (citation omitted). I listened to C.A.'s testimony, observed her demeanor, and found her to be credible. I discerned no motive for her to be untruthful. I have reviewed the evidence submitted by Reedy in support of his § 2255 motion, and it does not change my conclusion that C.A. was telling the truth when she testified that her father supplied her with methamphetamine and watched her use it.

Importantly, C.A. did not identify a date, time, or place that the incident occurred. Therefore, even if the text messages show that C.A. did not see Reedy on the date in question or that Reedy did not come home that night, that evidence alone would not render C.A.'s testimony false. Moreover, I may have found the

testimony of Cindy Reedy and Monreal to be less than credible. While the newly proffered evidence could have been offered to impeach C.A., it certainly does not rise to the level of establishing Reedy's innocence of Violation 3. C.A. credibly testified that her father gave her methamphetamine at an unspecified time and place in January 2018 and watched her use it. None of the new evidence presented undermines her story.

Reedy further assumes that had I not found that he committed Violation 3, he would have received a significantly reduced sentence. He bases this assumption on the fact that the other three violations were Class C violations, while Violation 3 was a Class A violation. However, Reedy admitted that he violated the conditions of his supervised release three times as alleged in Violations 1, 2, and 4. While explaining the reasoning behind the length of Reedy's sentence, the court specifically stated that it intended to "punish the breach of trust" by Reedy. *Id.* at 23. That breach of trust was significant because the court had already extended his supervision once without sentencing him to a term of imprisonment in order to allow him to undergo drug treatment. In other words, I had given him several chances to comply with the conditions of his supervised release, and he had repeatedly failed to comply.

When it comes to determining a sentence after revoking supervised release, the district court has broad latitude. *United States v. Slappy*, 872 F.3d 202, 206

(4th Cir. 2017). Reedy's 18-month sentence was six months less than his possible maximum sentence of 24 months imprisonment. *See* 18 U.S.C. § 3583(e)(3). Reedy has not shown that, but for errors made by his counsel, I would have sentenced him to a shorter term of imprisonment. He thus has not satisfied the prejudice prong of *Strickland*.

Reedy's second claim, that he was denied due process because the government relied on allegedly materially false statements, also fails. First, this claim was procedurally defaulted because Reedy failed to raise it on direct appeal. Aside from claims of ineffective assistance of counsel, a claim not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Reedy has not shown has not shown cause for this default, nor has he demonstrated actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Second, as explained above, Reedy has failed to establish that C.A.'s testimony was in fact false. Finally, his sentence of 18 months imprisonment was below the maximum 24 month sentence, so he cannot demonstrate that it represents a miscarriage of justice. Therefore, his second asserted ground does not entitle him to relief.

IV.

For these reasons, the United States' motion to dismiss will be granted and the § 2255 motion will be dismissed. A separate final order will be entered herewith.

DATED: August 22, 2019

/s/  James P. Jones
United States District Judge